WILLIAM J. ROBERTS *vs*. BOSTON AND MAINE RAILROAD.

York.   Opinion April 6, 1891.

*New Trial. Railroad. Defective Car. Due Care. Verdict. Jury.*

Upon a motion for a new trial, in an action where the plaintiff obtained a verdict for injuries received by means of an alleged defective car, it appearing that the overwhelming weight of evidence was in favor of a sound car; that

the plaintiff's account of the manner of his injury was improbable; and his admissions to others, before the action was brought, differing therefrom; *Held*: that the jury must have been influenced by some improper motive in rendering a verdict for the plaintiff, and a new trial should be ordered.

ON MOTION.

This was an action in which the jury returned a verdict of $5,564.60, in favor of the plaintiff, for personal injuries received while in the employ of the defendant corporation.

It appeared that the plaintiff, a brakeman on a freight train which left Portland for North Berwick, December 5, 1887, was injured at Pine Point by being crushed between the engine and a car which he was uncoupling to leave on a side track. He was middle brakeman (so called) and with the engine and a single box-car, cut loose from a longer train, while all were in motion some distance easterly from the station, and ran ahead over the switch to set the car off, leaving the remainder of the train still in motion. From the time he severed the single car with the engine from the remaining cars, he was in charge of the train so severed and on top of the car until it had passed westerly of the switch, and he descended between the tender and car to draw the pin as the engine "kicked" it upon the side track. He attempted twice to draw the pin, failing the first time; the second time he succeeded. He testified that both engine and car were stationary when he made the first attempt, but both in motion when he made the second, and was injured by being crushed between the rear end of the tender and forward end of the car.

He based his claim to recover upon the alleged defective condition of the car, in that the "springs of the draw-bar were weak, insufficient, useless," the "dead-wood worn, insufficient, useless," and "other parts of the draw-bar weak, worn, useless;" and his writ alleged that, because of such defects, the draw-bar was pushed in by the engine in "kicking" the car further than it would have been if it had been sound, whereby he was injured.

Plea was the general issue with brief statement, &c., alleging that plaintiff's injuries were caused by his own negligence, or that of his fellow-servants; that the defendant was not in any manner negligent either in its selection or retention of its

servants, or in the construction, equipment, care or condition of repair of its engines or cars ; that this particular car was not defective or out of repair or worn beyond reasonable prudence to use, and the draw-bar of said car was in good, sufficient and sound condition as to its springs, &c.

The view taken by the court renders a report of the testimony, bearing on the issues of contributory negligence, &c., argued by counsel, unnecessary.

*H. Fairfield*, for plaintiff.

Counsel argued that the car was defective in that the deadwood was worn, and the spring was weak or broken, or that the draw-bar was too short, so that, after the pin was pulled, the draw-bar shoved under the car and allowed the tender and car to come together more nearly than if the dead-wood or spring had been sound, and the draw-bar long enough. The defects were of such a nature that the defendant did have or should have knowledge.

Plaintiff was in the exercise of ordinary care. Engineer and car inspectors not co-employes (*Shanny* v. *Androscoggin Mills*, 66 Maine, 420,) or if co-employes the defendant's negligence would still be proximate cause of injury. *Cin. & R. R.* v. *McMullen*, 117 Ind. 439 (S. C. 10 Am. St. Rep. 311) ; *Griffin* v. *Boston & R. R.* 148 Mass. 143 ; *Tierney* v. *R. R.* 33 Minn. 311 ; (S. C. 53 Am. Rep. 35 ;) *Rogers* v. *Ludlow M'fg. Co.* 144 Mass. 198.

*G. C. Yeaton*, for defendant.

Whatever the actual condition of the car and its draw-bar, defendant corporation having employed suitable car inspectors and having caused each car of the train, including this one, to be inspected by such, immediately prior to the time the train started, did its whole duty, and can not be said to have been negligent.

That the duty of supplying cars in proper repair, and of preserving them thus, is not an absolute one, but one which is always in the case of cars without original structural defects, to be performed by employes, is both by usage and necessity equally well-established.

Whether those employes, whose specific duty it is to examine cars, are or not fellow-employes with train-hands in such sense that the latter are precluded from recovery for injuries caused by the neglect of the former, has not been decided alike in all American courts.

Those of Kansas, Minnesota, Wisconsin, Iowa, and possibly some others have said no, while those of Massachusetts, Michigan, Ohio, Illinois, and perhaps others, have said yes.

The cases are collected in Patterson's Railway Accident Law, § 322 *et seq.*, and in an extended note to *Darracutts* v. *Ches. & Ohio R. R. Co.* 31 Am. &. Eng. R. R. cases, 157, 163, 168 ; and note in vol. 39 same series, pp. 334, 346. See also *C. & A. R. R.* v. *Bragonier, Adm.* 11 Ap. Ct. Ill. 516 ; *Smith* v. *Flint & Pere Marquette R. R. Co.* 46 Mich. 258 ; *Columbus & Zenia R. R. Co.* v. *Webb, Adm.* 12 Ohio St. 475 ; *Mackin* v. *B. & A. R. R.* 135 Mass. 201. In the last three cases cited, the precise point seems to have been the only point considered in the cases. *Vide* cases cited by counsel in *Judkins* v. *M. C. R. R.* 80 Maine, 417. Not directly decided in this state unless in *Osborne* v. *K. & L. R. R.* 68 Maine, 49.

If it was dangerous to attempt to uncouple while descending from the top of the car and while both locomotive and car were in motion, as he says he did, and not so to uncouple while both were stationary, or if he could have attempted it from the ground while both were stationary, his choice of the dangerous method, or of the more dangerous method, instead of the safe or less dangerous method, was a failure on his part to use that degree of caution the law required of him, and will defeat his recovery.

Exactly this has been decided in many cases, among others in *Muldowney* v. *Central R. R. of Iowa*, 39 Iowa, 615 ; *Williams* v. *Central R. R. of Iowa*, 43 Iowa 396 ; *Henry* v. *Bond*, 34 Fed. Rep. 101, and cases collected in note ; *Railroad* v. *Ryan*, 69 Tex. 663 ; *Georgia Pacific R. R. Co.* v. *Probst*, 83 Ala. 518 ; *Tuttle* v. *Detroit, Gr. Haven & Mil. Ry.* 122 U. S. 189. See also cases in this state cited *post.*

It has even been held that railroad corporations are negligent if they omit to prescribe rules relating to "flying switches,

shunting and kicking cars." *Vose, Adm.* v. *Lon. & York Ry. Co.* 2 Hurls. & Nor. 728 ; *Chic. & N. W. R. R. Co.* v. *Talyor et al. Adm.* 69 Ill. 461 ; *Reagan* v. *St. L. Kas. & N. R. R. Co.* 93 Mo. 348. See a full case, *Penn. Co.* v. *Whitcomb, Adm.* 111 Ind. 212.

Can it be held that the corporation is negligent if its fails to make such a rule, and at the same time a train employe may decline to read it when made, although open to his daily inspection on a spindle in the car in which he always rides when not elsewhere engaged ?

No reported case in this state has given any countenance to the doctrine that a brakeman of experience, with knowledge actual or constructive of a rule of the road prohibiting it, may in broad daylight attempt to uncouple a car from a locomotive while both are in motion while he could wait until both were stationary, and recover for injuries so received from alleged defects which were apparent to the eye. *Osborne* v. *Knox & Lincoln R. R.* 68 Maine, 49 ; *Wormell* v. *M. C. R. R.* 79 Maine, 397 ; *Judkins* v. *M. C. R. R.* 80 Maine, 417 ; *Guthrie* v. *M. C. R. R.* 81 Maine, 572 ; fully discuss and apply nearly all the principles defendant invokes here. See also *Hull* v. *Hall*, 78 Maine, 114 ; and *Nason* v. *West, Id.* 253 ; 2 Thomp. on Negligence, notes pp. 982-1020, and the numerous citations collected in Deering on Neg. 196, 212 ; Beach on R. R. 971.

Damages : Assuming that plaintiff's present disability is all he claims, and will continue unabated for the full term of his natural life, and giving him all the expectancy the tables allow (about twenty-three years,) and assuming also that he can never acquire dexterity enough to increase his earnings from what they now average (sixty cents per day,) then his daily loss could be but one dollar and fifteen cents (he did earn one dollar and seventy-five cents,) his annual loss at the very maximum possible of three hundred and thirteen days per annum, would be less than three hundred and sixty dollars ; and a capitalized amount sufficient (according to standard published tables) to have this annual value, would be some twelve hundred dollars less than the amount of this verdict.

HASKELL, J.   The plaintiff claims damages for bodily injury received, by reason of a defective draw-bar, in uncoupling a freight box-car from the tender of a locomotive, while the former was being pushed upon a siding, whereby he was caught and jammed between the two.

The plaintiff says that, having descended over the front end of the car next to the tender, while they were at a stand-still, he tried to pull the coupling-pin, but that it would not come out on account of a crook in it; that he turned it so that the crook was lengthwise of the hole in the draw-bar, and then pulled it out and laid it upon the deadwood; and that, meantime, the engine and car had begun to move towards the siding, and were in motion when he pulled the pin; that he then attempted to ascend the ladder on the end of the car and was caught and jammed against it by the tender; that while hanging to the ladder, after his limb had been crushed, he saw that the deadwood had been eaten out on the lower edge by chafing from the head of the pin, and that the draw-bar had shoved under the car, so that the pin-hole was out of sight.

The fireman, who was discharged from the company's service before the trial, says that, after the accident, he saw the car and the deadwood had been " champered out," where the pin had gone underneath it.

On the other hand, it is conclusively shown that the lower front edge of the deadwood was protected by an iron plate three fourths of an inch thick and two inches wide, bolted on, that would naturally make the chafing testified to by the plaintiff and fireman impossible.

Moreover, the conductor and a car-inspector of seventeen years experience both testify that they examined the car after the accident and on the same day of it, and that the deadwood and draw-bar were were sound and perfect, and that the couping gear was in no way defective or out of repair.   This same inspector and another of seven years experience and the foreman of defendant's car department, within ten days after the accident, all testify that they examined the car and found the coupling gear sound and in good order.

The car was being shoved backward, up a slight incline, when

the plaintiff pulled the pin, and it is hard to see how he could have done so, if, as he says, the draw-bar had been defective as indicated by an eaten condition of the deadwood, so that pressure would shove the head of the pin two or three inches under the deadwood, for there is no evidence to show that greater pressure was put upon the draw-bar after the car began to move than at the inception of its momentum, and such is not the natural result of moving a single car on a nearly level track.

Mr. Meritt, defendant's superintendent of many years standing, and a man well-known, testifies that, after the accident, the plaintiff called at his office in Boston and told him that, when he "reached down to pull the pin, he lost his balance and fell over between the draw-bars."

The conductor testifies that, on the same day of the accident, he asked the plaintiff "how he got in there," and he replied that "he didn't know."

The plaintiff does not pretend to have observed the eaten condition of the deadwood, while drawing the pin, indicating a defective draw-bar; and it is very improbable that, after he had been so severely injured and while he was hanging to the ladder for his life to prevent falling under the moving train, he should have observed the condition of the draw-bar to determine whether it was defective or not.

Considering, then, the overwhelming weight of evidence in favor of a sound car, and the improbability of the plaintiff's account of the manner of his injury, together with the testimony of two witnesses as to the plaintiff's own account, of how it occurred, before he had become stimulated with the zeal of a lawsuit, showing that he either received his injury in an entirely different way from that now claimed, or that he did not know exactly how he did receive it, which is quite probable, it seems as if the jury must have been influenced by some improper motive in rendering a verdict for the plaintiff; it is, therefore, considered that a new trial should be ordered.

*Motion sustained.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and WHITEHOUSE, JJ., concurred.